Dennis G. MARTIN, as Administrator of
the Estate of Harry Eugene Walker,
Deceased, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 72–3044–AAH.

United States District Court,
C. D. California.

April 4, 1975.

Zetterberg & Zetterberg, Stephen I.
Zetterberg, Claremont, Cal., for plaintiff.

William D. Keller, U. S. Atty., Fred-
erick M. Brosio, Jr., Asst. U. S. Atty.,
Chief, Civil Div., and William B. Spivak,
Jr., Asst. U. S. Atty., for defendant.

## MODIFIED FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT

HAUK, District Judge.

On December 20, 1972, a complaint
under the Federal Tort Claims Act,
being 28 U.S.C.A. Section 2671 et seq.
and 28 U.S.C.A. Section 1346(b), having
been filed in this Court against the
United States of America as defendant,
by Dennis G. Martin, Administrator of
the Estate of Harry Eugene Walker, De-
ceased, pursuant to Letters of Adminis-
tration duly issued to said Dennis G.
Martin by the Superior Court of the
State of California, County of Los Ange-
les, case number EAP–9456, Zetterberg
& Zetterberg, and Stephen I. Zetterberg,
attorneys for plaintiff, claiming dam-
ages for the wrongful death of Harry
Eugene Walker, on behalf of the surviv-
ing mother and father and three sisters
of said decedent, Harry Eugene Walker;
and

On or about September 14, 1972, the defendant United States of America having appeared by William D. Keller, United States Attorney, Frederick M. Brosio, Jr., Assistant United States Attorney, Chief, Civil Division, and William B. Spivak, Jr., Assistant United States Attorney, and said defendant United States of America having answered, and the Court having heard and disposed of all motions and pre-trial proceedings, and the case having been brought to issue; and, the case having duly come on for trial before this Court, the Honorable A. Andrew Hauk, Judge presiding, on January 9, 1975, before the Court without a jury pursuant to the Federal Tort Claims Act, testimony having been taken January 9 through January 17, 1975, and the case having been recessed, and further testimony having been taken February 18 through February 24, 1975, evidence, oral, written, and documentary, having been introduced, and defendant United States of America having submitted evidence offered in behalf of its defense, and the parties having rested, and due deliberation having been had thereon by the Court:

I do decide as follows:

## FINDINGS OF FACT

1. Decedent Harry Eugene Walker, age twenty-five on the date of his death, was killed by a grizzly bear on the night on June 24–25, 1972, while camping in the Old Faithful Subdistrict of Yellowstone National Park, State of Wyoming, United States of America.

2. Defendant owned, operated and maintained said National Park as a place to which members of the public, including decedent, were invited for recreational purposes, to the benefit of defendant.

3. Defendant's Rangers on duty when the decedent entered the Park at the north entrance of Yellowstone National Park permitted the decedent to enter without paying the usual admission charge.

4. In particular, defendant invited and encouraged many people, including decedent, to camp within the confines of the Park, both within improved campgrounds and in backcountry, and defendant knew that many people did, at and before the date of decedent's death, in fact, camp and sleep out in the backcountry areas of the Park, and in the country in and adjacent to the developed area at Old Faithful, in the Old Faithful Subdistrict of the Park.

5. Defendant, through its various grizzly bear control programs, exerted control over the behavior of grizzly bears, including the particular bear that killed decedent, in that it could and did exert control over the number of bears, the ranges of the bears, including the bear that killed decedent, their diet, and the relative danger they posed to Park visitors.

6. Prior to decedent's death, defendant had abruptly closed backcountry garbage dumps, including Rabbit Creek garbage dump, about four miles from the Old Faithful developed area. This and other such garbage dumps had been used by grizzly bears for years as a part source of food. Defendant knew, from partial dump closures in 1968 and 1969, and from dump closures thereafter, that abrupt closure of the garbage dumps was an extremely hazardous activity. Defendant had been previously warned that if it carried out such abrupt closure, there could be a resulting visitor death from grizzly bear attack.

7. It was the duty of the defendant and its employees at Yellowstone National Park to warn all visitors, including decedent, of park dangers known to the defendant. Whether the decedent be said to be a business invitee, a business licensee, a business visitor, or a gratuitous licensee, the defendant at all times had a duty of warning him and all other persons in Yellowstone Park of hidden dangers and of dangers of camping or sleeping or walking near to and including the area where the body was found, which the Court finds was within a developed area. The defendant had knowledge, prior to and at the time

of decedent's death, that backpackers and hitchhikers were in the Old Faithful area, including the developed area, sleeping out at night. Warnings could have been made of the grizzly bear dangers to such campers resulting from the program of abrupt closing of garbage dumps undertaken by defendant. Such closing imposed an extra hazard of grizzly bear danger to campers and backpackers sleeping out in such area. Warnings could have been made by signs, and signs could have been made pointing to campgrounds and campsites within a reasonable distance. The Park willfully and intentionally failed to provide such warnings and place such signs despite the minimal cost thereof.

8. Furthermore, prior to 1968, the brothers Dr. Frank C. Craighead and Dr. John J. Craighead, through studies sponsored by many institutions, including the National Geographic Society, the National Science Foundation, and others, through the Montana Cooperative Wildlife Research Unit at the University of Montana, and by the Environmental Research Institute, by independent reserach conducted in Yellowstone National Park commencing in 1959, had developed a system of radio monitoring grizzly bears instrumented with radio collars, and of visually tagging grizzly bears, so that the habits, ranges, and movements of grizzly bears could be observed. The defendant, under the administration of Superintendent Anderson commencing in Yellowstone in 1968, willfully and intentionally stopped all of such radio monitoring and tracking as recommended by the Craigheads, and contrary to the defendant's own so-called "Leopold" report, discontinued monitoring and visual tracking, and willfully and intentionally removed devices recommended by the Craigheads for such monitoring, despite evidence which showed that radio monitoring devices could have been furnished and installed for between $3,000 and $6,000. The evidence shows that the defendant's administration at Yellowstone National Park, instead of discontinuing the monitoring

plan, should have radio monitored bears which were trapped for transplanting, including the bear trapped in 1970, identified as number 1792, which killed Harry Walker in 1972. The evidence showed increased grizzly bear activity in and around the developed areas of Yellowstone National Park, which had been near the garbage dumps which were closed. It was negligent on the part of the defendant, at the time it undertook the extra hazard of closing down the garbage dumps, willfully and intentionally to discontinue radio and visual monitoring as recommended both by the Craighead brothers and by the defendant's "Leopold" committee. Defendant's own reports including the report prepared for the defendant by the National Academy of Sciences, showed that before the stopping of radio monitoring and of identifiable visual color markings which had been used by the Craigheads in grizzly studies before the Park administration changed in 1968, information and statistics on grizzly bear activities were more reliable and better than those available after the system was curtailed, starting in 1968. The defendant should have allowed independent research on the grizzly bear such as had been conducted by the Craighead brothers prior to 1968. The need for continued research was confirmed by the study made for the defendant by the National Academy of Sciences, which in July, 1974, reported that the research program carried out by the National Park Service administration since 1970 has been inadequate to provide the data essential for devising sound management policies for grizzly bears in the Yellowstone ecosystem.

9. The defendant adopted the "abrupt" program for closing of the dumps, rather than following the "phasing out" closure procedures as recommended by Dr. Frank Craighead. Both Dr. Craighead, and the "Leopold" committee appointed by the defendant, had recommended supplementary "carrion feeding" of the bears in the backcountry as a procedure which should have been

adopted during the phasing out of the garbage dumps.

10. The bear that killed decedent, number 1792, was an old female, with worn and broken teeth, that had been captured and trapped in, and transplanted approximately 18 miles from, the developed area of the Old Faithful Subdistrict of Yellowstone National Park, by agents and rangers of the defendant, on about October 14, 1970. When the defendant trapped grizzly bear number 1792, it failed to transfer the bear a sufficient distance, considering grizzly bear homing instincts of which defendant had knowledge, to return to the Old Faithful area. The bear did again visit the area, where it killed the decedent. The Park Service at Yellowstone could and should have removed the bear a sufficient distance so that she would not have come back.

11. Defendant failed to exercise due care toward decedent in the following respects:

a. Defendant failed to provide decedent and other Park visitors adequate warnings about the dangers posed by grizzly bears, which defendant knew to be dangerous animals within the Park.

b. In carrying out its program of grizzly bear management and control, defendant abruptly closed garbage dumps in Yellowstone National Park at which grizzly bears formerly fed, thus negligently creating an unreasonable danger to Park visitors, including decedent, from grizzly bears, including this grizzly bear.

c. Defendant failed to take adequate precautions to mitigate the extreme danger created by abrupt closure of the garbage dumps, and failed to warn visitors, including decedent, of the special danger, although it could and should have done so at minimal cost and expense to it.

d. Defendant was aware of the dangers of grizzly bears to Park visitors. Defendant, knowing such dangers, did undertake some inadequate precautions, but such precautions were carelessly and faultily planned, and negligently executed.

e. In 1970 defendant captured the particular bear that later killed decedent. Defendant then had knowledge that the bear was dangerous to visitors and was likely to return to the Old Faithful Subdistrict, but negligently failed to transplant the bear an adequate distance or to eliminate it from the grizzly bear population in Yellowstone National Park, in particular the Old Faithful Subdistrict thereof, including the developed area in and around Old Faithful Village.

Defendant was negligent in that it failed to act with reasonable prudence, considering the information available to it, concerning the particular bear that killed Harry Eugene Walker. Prior to the capture and transfer of this particular grizzly bear in October of 1970, it had been seen four to six times in the developed area of Old Faithful Village near a garbage holding area behind a restaurant, in an area frequented by humans thus displaying dangerous lack of respect for humans. Moreover, when the bear was captured in October, 1970, it was an old female grizzly; Dr. Frank Craighead testified that it would have been prudent to examine the bear's teeth, which in 1972 were found to be worn; the bear was less able to be competitive for food with younger and stronger bears, and therefore more likely to invade camp areas in search of food, making the bear unreasonably dangerous to humans. Further, at the time of its capture, defendant had knowledge that in late August or early September, 1970, along the Fire Hole River near the Old Faithful Developed area, a campsite had been destroyed by a bear, the owner of the campsite was missing, and never found, and the defendant rangers had determined the campsite had likely been destroyed by a bear, possibly a grizzly bear, but negligently failed to act with reasonable prudence in that defendant failed to consider the possibility that the bear which destroyed the said Fire Hole River camp prior to October, 1970, could

have been the bear which was trapped and transplanted in 1970, and which later killed Harry Eugene Walker.

12. As a sole, direct, and proximate result of each of the negligent acts and omissions of defendant, taken individually and together, including and as a direct and proximate result of the activity of abrupt closing of garbage dumps, and as a direct and proximate result of defendant's failure to avert an attack on the decedent by prudent control action on the grizzly bear which killed decedent, and as a direct and proximate result of the failure of the defendant and its employees to warn decedent of danger known to them but unknown to him, to wit, the danger of grizzly bears in Yellowstone National Park, and particularly in the Old Faithful Subdistrict and Old Faithful Village area of Yellowstone National Park, Harry Eugene Walker's death was caused.

13. The decedent was not contributorily negligent, and did not directly or indirectly contribute to the cause of his own death.

14. Decedent was trained and experienced in dairying, and particularly in operating the family dairy in Alabama, and plaintiffs had a reasonable expectation that he would operate the family dairy farm with his father, and manage and operate the farm on his father's illness and retirement, and his death caused the family, and each member thereof, loss of support, care, comfort, advice, society, and nurture in the amount hereinafter found as damages.

15. The practice in this part of Alabama was for dairies to be run in family partnership, including parent and son, or sons, and the decedent and his father had an understanding and agreement to so operate the dairy farm owned by decedent's mother and father.

16. Decedent's heirs entitled to recover damages for the wrongful death of Harry Eugene Walker are his father, Wallace R. Walker, his mother, Jessie Louise Walker, and his younger sister, Jenny Lynn Walker, who at the time of his death, and at the time of trial, was living at home. I make no award to decedent's older sisters, Betty Simmons and Caroline Crowe, since they had left home and established their own families prior to his death.

17. The family is entitled to recover burial expenses, loss of support, and loss of care, comfort, advice, society, nurture, in the proportion suffered by each. I find that the total damages suffered by the family to be: $1,217.67 paid by the father for burial expenses; $61,200.00 for loss of support, and $25,000.00 for non-pecuniary losses, totalling $87,417.67, plus costs, allocable as follows:

a. To the father, Wallace R. Walker, the sum of two-fifths (⅖th) of $61,200.00, that is, the sum of $24,480.00, plus $1,217.67 burial, plus $10,000.00 non-pecuniary loss, for a total of $35,697.67;

b. To the mother, Jessie Louise Walker, the sum of two-fifths (⅖th) of $61,200.00, that is, the sum of $24,480.00, plus $10,000.00 non-pecuniary loss, for a total of $34,480.00;

c. To the sister, Jenny Lynn Walker, the sum of one-fifth (⅕th) of $61,200.00, that is, the sum of $12,240.00, plus $5,000.00 non-pecuniary loss, for a total of $17,240.00

18. The plaintiff, Dennis G. Martin, is a resident of the State of California, and of the Central District of California, and is the duly-appointed Administrator of the Estate of Harry Eugene Walker, Deceased, appointed by order of the Superior Court of the State of California for the County of Los Angeles, and the judgment should be paid to him, to receive and disburse the funds in order to carry out the terms of the findings and the judgment.

19. Any Conclusions of Law deemed to be Findings of Fact are hereby incorporated in the foregoing Findings of Fact.

## CONCLUSIONS OF LAW

1. Defendant United States of America, in its administration of the National

Park Service in Yellowstone National Park, was negligent, and failed to exercise due care towards the decedent, Harry Eugene Walker, in each of the several respects hereinabove specifically set forth in the findings of fact.

2. The negligence of the defendant, United States of America, was the sole, direct, and proximate cause of the death of Harry Eugene Walker on the night of June 24–25, 1972.

3. The decedent Harry Eugene Walker was not contributorily negligent and did not directly or indirectly contribute to the cause of his death.

4. The defendant has failed to establish any affirmative defense to plaintiff's action for wrongful death.

5. Plaintiff should have judgment in the amount of damages fixed by the Court, in the foregoing Findings of Fact, and for costs.

6. Any Findings of Fact deemed to be Conclusions of Law are hereby incorporated in the foregoing Conclusions of Law.

Let judgment be entered for plaintiff in accordance with these findings of fact and conclusions of law.

## MODIFIED JUDGMENT

Upon the Court's own motion, and the Defendant United States of America having on March 31, 1975, filed its Objections to Plaintiff's Findings of Fact, Conclusions of Law and Judgment, one day within the two week time period after Plaintiff lodged his Findings of Fact and Conclusions of Law and Order for Judgment on March 18, 1975, all as ordered by the Court on February 24, 1975; and

The Court having inadvertently signed and entered its Judgment herein on March 26, 1975, prior to the receipt of Defendant's said objections; and

Good cause appearing therefor, the Court now makes, signs and orders entered its Modified Judgment, as follows·

The above-entitled action came on for trial before the Court, the Honorable A. Andrew Hauk, United States District Judge, sitting without a jury, prusuant to the Federal Tort Claims Act, 28 U.S. C. 1346 et seq., on January 9, 10, 13, 14, 15, 16 and 17, 1975, and February 18, 19, 20, 21 and 24, 1975, at Los Angeles, California, the plaintiff, Dennis G. Martin, duly appointed Administrator of the Estate of Harry Eugene Walker, Deceased, appearing in person and by his attorney, Stephen I. Zetterberg and Zetterberg & Zetterberg, of Claremont, California, and the defendant United States of America appearing by the United States Attorney for the Central District of California, William D. Keller, and Assistant United States Attorneys Frederick M. Brosio, Jr., Chief, Civil Division, and William B. Spivak, Jr., in person appearing for said defendant, and the Court having rendered its decision and having filed Modified Findings of Fact, Conclusions of Law, and Order for Judgment herein, now, pursuant to said Order for Judgment, it is hereby:

Ordered and adjudged, that the plaintiff, Dennis G. Martin, as Administrator of the Estate of Harry Eugene Walker, Deceased, have judgment against the defendant in the sum of $87,417.67, to be allocated to the survivors of Harry Eugene Walker, Decedent, as follows:

To Wallace W. Walker, father of the decedent, $35,697.67;

To Jessie Louise Walker, mother of the decedent, $34,480.00;

To Jenny Lynn Walker, sister of the decedent, who is over the age of 18 years, the sum of $17,240.00;

and for the costs and disbursements of plaintiff in this action, to be hereinafter taxed, on notice, and hereinafter inserted by the Clerk of this Court, in the sum of $_____.

Let this judgment be entered.